In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 22-1007

KARSTEN KOCH,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF HARTLAND,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 21-cv-503 — **William E. Duffin**, *Magistrate Judge.*

———————————

ARGUED MAY 27, 2022 — DECIDED AUGUST 8, 2022

———————————

Before ST. EVE, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges*.

ST. EVE, *Circuit Judge*. The Village of Hartland, Wisconsin ("the Village") passed an Ordinance ("the Ordinance") placing a moratorium against any new sex offenders residing there, whether on a temporary or permanent basis. Karsten Koch is a registered sex offender who would like to move into the Village to be closer to work and family. He sued the

Village over the Ordinance, asserting that it violated the Ex Post Facto Clause of Article I, Section 10 of the Constitution.

A law must be both retroactive and penal to transgress the Ex Post Facto Clause. Ruling for the Village on cross-motions for summary judgment, the district court concluded that the retroactivity rule from two Seventh Circuit opinions—*United States v. Leach*, 639 F.3d 769 (7th Cir. 2011) and *Vasquez v. Foxx*, 895 F.3d 515 (7th Cir. 2018)—controlled. Under this precedent, a law is not retroactive, and therefore cannot violate the Ex Post Facto Clause, if it applies "only to conduct occurring *after* its enactment." *Id.* at 520. The Ordinance, then, applied prospectively, and there was no need to determine whether it was also penal.

While the district court faithfully applied circuit precedent, we no longer believe the *Leach-Vasquez* rule governing retroactivity is tenable. We reverse and remand; the Ordinance is retroactive. The district court, on remand, must consider in the first instance whether it is "punitive."

## I.

### A.

On September 24, 2018, the Village of Hartland, Wisconsin enacted Ordinance No. 850-18, which prohibited the establishment of "Temporary or Permanent Residence" by a "Designated Offender," that is, a sex offender, within the Village "until such time as the saturation level for Designated Offenders in the Village of Hartland reaches a factor of 1.1 or lower …." A sex offender is a "person who has been convicted of … a sexually violent offense and/or a crime against children." The "saturation level" is

determined by adding the number of Designated Offenders per square mile in Hartland plus the number of Designated Offenders per 1,000 population in Hartland and dividing the resulting figure by the sum of the number of Designated Offenders per square mile in Waukesha County net of Hartland plus the number of Designated Offenders per 1,000 population in Waukesha County net of Hartland.

At the time the Ordinance went into effect, Hartland's saturation level was 6.75.

According to the Ordinance's "findings and intent" section, the Village recently learned that there were thirty-five sex offenders living within the Village, an allegedly high number compared to neighboring areas. The ordinance was a "regulatory measure aimed at protecting the health and safety of the children of the Village of Hartland from the risk that a convicted sex offender may re-offend in locations close to a Designated Offender's residence …." The U.S. Supreme Court has "recognized that the risk of recidivism posed by sex offenders is high and when convicted sex offenders re-enter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." That sex offenders "suffer a high rate of recidivism," the Village believed, "has a basis in fact," and they collectively "are a serious threat to public safety," pose specific dangers to children, and "are more likely to use physical violence." The "potential of psychological trauma to citizens of the Village is real but difficult to calculate."

The Village represents that the moratorium allows local police more time and flexibility in developing its dedicated community policing program to give officers a chance to

monitor sex offenders, address experiences, and decrease "re-
cidivism and community conflict." "As a result of the commu-
nity policing program and the moratorium," the Village
maintains, "resident designated offenders have not commit-
ted any sex offenses in the Village." The ordinance also gives
more time to pass "a sex offender residency ordinance that
will satisfy Constitutional requirements."

### B.

Koch is a registered sex offender. Before the Ordinance
was passed, he was convicted of one count of engaging in re-
peated acts of sexual assault on a child and two counts of sec-
ond-degree sexual assault of a child. He served seven years in
prison before being released. His convictions qualify him as a
"Designated Offender" under the Ordinance.

Since his conviction, Koch has worked to get his life on a
positive track. He found employment and now wishes to live
in Hartland to be closer to work and family, as the Village
provides more suitable rental properties than the town where
he currently resides. A property owner was even willing to
rent to Koch, but the Village's Ordinance prevents any land-
lord from doing so. Instead, Koch must continue to live with
his parents and commute a longer distance to work.

### C.

Koch sued the Village, alleging that the Ordinance de-
prived him of a constitutional right under the Ex Post Facto
Clause by criminally punishing his conduct before its enact-
ment. *See* 42 U.S.C. § 1983. Both parties moved for summary
judgment, and the district court granted the Village's motion.
The Ex Post Facto Clause proscribes "retroactive punish-
ment." For a law to violate this protection, it must be

retroactive and punitive. The district court only considered the retroactivity prong of the two-part test because two Seventh Circuit opinions—*Leach* and *Vasquez*—dictated the outcome. Under our precedent, a law creating only "new, prospective legal obligations" is not retroactive. Therefore, the Ordinance operates only prospectively because it "limits a Designated Offender's housing options based on [] prior history." "In other words, the Ordinance only applies to Koch's current desire to move to Hartland." The district court could not "accept Koch's invitation to reject *Leach* and *Vasquez* and follow the reasoning employed by other circuits when considering Ex Post Facto Clause challenges." And because the law was not retroactive, the district court did not need to consider whether it punished the targeted offenders.

Koch filed a timely appeal. We review a grant of summary judgment de novo, drawing all reasonable inferences "in the light most favorable to the nonmoving party on each motion." *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022) (quoting *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015)).

## II.

The Constitution provides that "[n]o State shall … pass any … ex post facto Law," U.S. Const. art. I, § 10, cl. 1, defined as an act that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal" deeds, *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 391–92 (1798)). *See also* U.S. Const. art. I, § 9, cl. 3 ("No … ex post facto Law shall be passed."). "Statutes that transgress the Ex Post Facto Clause [] share two characteristics: They are '*both* retroactive *and* penal.'" *Hope v. Comm'r*

*of Ind. Dep't of Corr.*, 9 F.4th 513, 530 (7th Cir. 2021) (en banc) (quoting *Vasquez*, 895 F.3d at 520).

**A.**

We have held that a regulatory scheme applying "only to conduct occurring *after* the law's enactment" is merely prospective and thus cannot violate the Ex Post Facto Clause. *Vasquez*, 895 F.3d at 520. Koch concedes that under current precedent the Ordinance is not retroactive because it targets only future conduct, that is, taking up residency in the Village. Nonetheless, he urges us to overturn this rule, which conflicts with the history and values of the Ex Post Facto Clause, Supreme Court precedent, and the consensus among other circuits and state courts. We take this opportunity to overrule it.[1]

**1.**

The Ex Post Facto Clause safeguards the legal principle that there can be no punishment without law, *nulla poena sine lege*. This maxim has a long history. The Digest of Justinian, a sixth-century codification of Roman law, declared, "The penalty for a past wrong is never increased ex post facto." Robert G. Natelson, *Statutory Retroactivity: The Founders' View*, 39 Idaho L. Rev. 489, 500 (2003). William Blackstone, in his influential *Commentaries on the Laws of England*, recounted with horror how the emperor Caligula posted laws that could not be seen by the public and then prosecuted his subjects. 1 William Blackstone, *Commentaries* \*46; *see generally* Evan C. Zoldan, *The Civil Ex Post Facto Clause*, 2015 Wis. L. Rev. 727,

---

[1] Because this opinion overrules circuit precedent, we circulated it to all active members of the court under Circuit Rule 40(e). A majority of judges did not wish to rehear the case en banc.

737. An ex post facto law, he described, happens when, "after an action is committed," a rogue legislator "for the first time declares it to have been a crime." 1 William Blackstone, *Commentaries* *46. "It is impossible that the party could foresee that an action, innocent when it was done, should be afterwards converted to guilt by a subsequent law; he had therefore no cause to abstain from it; and all punishment for not abstaining must of consequence be cruel and unjust." *Id.*

Despite this venerable history, Parliament still enacted acts that resembled ex post facto laws. David F. Forte & Matthew Spalding, *The Heritage Guide to the Constitution* 203. Against this backdrop, the Framers included the Ex Post Facto Clauses in the Constitution. *See* U.S. Const. art. I, §§ 9–10. These provisions garnered prominent support from early leaders and jurists. James Madison opined that "ex-post-facto laws … are contrary to the first principles of the social compact, and to every principle of sound legislation." *The Federalist No. 44* (James Madison). The constitutional protections against such laws then, Alexander Hamilton posited, provide essential "securities to liberty and republicanism." *The Federalist No. 84* (Alexander Hamilton). Justice Samuel Chase observed, "The prohibition against their making any ex post facto laws was introduced for greater caution, and very probably arose from the knowledge, that the Parliament of Great Britain claimed and exercised a power to pass such laws … inflicting … punishment." *Calder*, 3 U.S. at 389. Examples include "declaring acts to be treason, which were not treason, when committed, at other times, [] violat[ing] the rules of evidence (to supply a deficiency of legal proof) … inflict[ing] punishments, where the party was not, by law, liable to any punishment; and in other cases, [inflicting] greater punishment, than the law annexed to the offence." *Id.*

The clauses serve at least two purposes. *See Stogner v. California*, 539 U.S. 607, 612 (2003); *see also* Wayne A. Logan, *The Ex Post Facto Clause and the Jurisprudence of Punishment*, 35 Am. Crim. L. Rev. 1261, 1276 (1998). First, they prevent governments from promulgating "manifestly unjust and oppressive" laws. *Calder*, 3 U.S. at 391. A "Constitution that permits … legislatures to pick and choose when to act retroactively[] risks both 'arbitrary and potentially vindictive legislation,' and erosion of the separation of powers." *Stogner*, 539 U.S. at 611 (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994) ("[A legislature's] responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals."). Second, they ensure that a defendant is given "fair warning" to allow him to conform his actions before embarking upon a course of conduct. *Carmell v. Texas*, 529 U.S. 513, 533 (2000). At bottom, the government must always "play by its own rules." *Id.*

**2.**

The Supreme Court has recognized the values embodied by the Ex Post Facto Clauses and adhered to a broader understanding of retroactivity than used by our court.[2] The clearest formulation of the retroactivity inquiry—and the one we

---

[2] *See, e.g., Stogner*, 539 U.S. at 612; *Smith v. Doe*, 538 U.S. 84, 92–95 (2003); *Carmell*, 529 U.S. at 533; *Morales*, 514 U.S. at 504–05; *Collins v. Youngblood*, 497 U.S. 37, 41–42 (1990); *Weaver*, 450 U.S. at 28; *Dobbert v. Florida*, 432 U.S. 282, 298 (1977); *Lindsey v. Washington*, 301 U.S. 397, 401 (1937); *Rooney v. North Dakota*, 196 U.S. 319, 324–25 (1905); *In re Medley*, 134 U.S. 160, 171 (1890); *Gut v. Minnesota*, 76 U.S. 35, 37 (1869); *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325–26 (1866).

adopt today—comes from *Weaver v. Graham*, 450 U.S. 24. There, Florida charged the prisoner with a crime on January 31, 1976, and he was convicted six months later. *Id.* at 26. At the time, state law provided a system of "gain-time credits" for every prisoner who maintained good behavior. *Id.* The state then passed a new law that went into effect January 1, 1979, making it more difficult to receive these credits; it applied to all prisoners, even those sentenced before its effective date. *Id.* at 27. In defending the law against an Ex Post Facto challenge, the state argued that, given its effective date, it was not retrospective. *Id.* at 28. The Supreme Court soundly rejected that position—"it is the effect, not the form, of the law that determines whether it is *ex post facto*." *Id.* When analyzing whether a law is retroactive, "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date." *Id.* A law that "applies to [citizens] convicted for acts committed before the provision's effective date" is retroactive. *Id.*

More recently, *Vartelas v. Holder*, 566 U.S. 257 (2012), reaffirmed this understanding of retroactivity. In 1996, Congress overhauled the immigration system by enacting the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *Id.* at 260. The law abolished the old two types of proceedings, deportation hearings and exclusion hearings, and replaced them with a simple "removal proceeding." *Id.* at 261–62. Under the old system, "lawful permanent residents who had committed a crime of moral turpitude could … return from brief trips abroad without applying for admission to the United States." *Id.* at 263. The question before the court was whether IIRIRA applied to lawful permanent residents who committed crimes of moral turpitude before the Act's effective date. *Id.* at 265. The dissenting justices did not believe

the law applied retroactively. *Id.* at 276–77 (Scalia, J., dissenting) ("Although the class of aliens affected by § 1101(a)(13)(C)(v) is defined with respect to past crimes, the regulated activity is reentry into the United States."). The majority disagreed. "The presumption against retroactive legislation … 'embodies a legal doctrine centuries older than our Republic.'" *Id.* at 266 (quoting *Landgraf*, 511 U.S. at 263). The case presented a "firm" example of why the principle exists. *Id.* at 267. "Neither [the] sentence, nor the immigration law in effect when [the immigrant] was convicted and sentenced, blocked him from occasional visits" abroad. *Id.* Applying the provision of IIRIRA "would thus attach 'a new disability' to conduct over and done well before the provision's enactment."[3] *Id.* The majority reemphasized the *Weaver* principle, "The essential inquiry … is 'whether the new provision attaches new legal consequences to events completed before its

---

[3] In suggesting a different test, the concurrence places undue weight on statements from the dissenting opinion in *Vartelas*, which the Court never adopted. The majority opinion, however, is entirely consistent with *Weaver*: a law that attaches a "new disability," *Vartelas*, 566 U.S. at 267, changes the "legal consequences of acts completed before its effective date," *Weaver*, 450 U.S. at 31. If any additional confirmation is needed, it then expressly incorporated *Weaver*'s language. *Vartelas*, 566 U.S. at 273 (quoting *Landgraf*, 511 U.S. at 269–70). Proclamations about unrelated laws, including footnote seven, were dicta. Only a single provision of IIRIRA was before the Court—opining about different statutes was not germane to the question presented. *Vartelas*, 566 U.S. at 265; *see also id.* at 270–72 (suggesting—but not adopting—different theories for RICO, *Fernandez-Vargas*, § 922(g), and recidivism sentencing enhancements). To the extent the concurrence is worried about laws not before us, we "observe the wise limitations on our function and [] confine ourselves to deciding only what is necessary to the disposition of the immediate case." *Whitehouse v. Illinois Cent. R. Co.*, 349 U.S. 366, 372–73 (1955).

enactment.' That is just what occurred here." *Id.* at 273 (quoting *Landgraf*, 511 U.S. at 269–70).

The Court has also implicitly acknowledged, in *Smith v. Doe*, 538 U.S. 84 (2003), that sex-offender laws applying to people with convictions before the effective date are retroactive. *Smith* involved Alaska's Sex Offender Registration Act, which had two components: a registration requirement and a notification system. *Id.* at 89–90. A sex offender had to register in the state promptly and verify the information on a regular basis. *Id.* Alaska chose to publish much of this information on the internet. *Id.* at 91. Two sex offenders challenged the law, and the Ninth Circuit agreed that the system violated the Ex Post Facto Clause. The Supreme Court reversed because the law did not punish pre-Act offenders, as the scheme had neither the purpose nor the effect of punishing past conduct. *Id.* at 92–95. But the Court never considered the possibility that the law was only prospective, noting even the components of the system were "retroactive." *Id.* at 90.

Other circuits employ a similar retroactivity analysis and recognize that sex-offender laws applying to conduct before their enactment date are retroactive. *See, e.g.*, *Doe v. Pataki*, 120 F.3d 1263, 1265, 1273 (2d Cir. 1997) (acknowledging implicitly that the law was retroactive and assessing then "whether a retroactively imposed burden constitutes 'punishment' within the meaning of the Ex Post Facto Clause"); *E.B. v. Verniero*, 119 F.3d 1077, 1092 (3d Cir. 1997) (examining a sex offender law and asking whether the state "has inflicted 'punishment'"); *United States v. Young*, 585 F.3d 199, 203 (5th Cir. 2009) (per curiam) ("Indeed, for a penal law to be considered ex post facto, it 'must apply to events occurring before its enactment.' Although SORNA does relate to old conduct that

was criminal when done, the question is whether SORNA punishes this old conduct."); *Does 1-5 v. Snyder*, 834 F.3d 696, 698 (6th Cir. 2016) ("It is undisputed on appeal that SORA's 2006 and 2011 amendments apply to them retroactively. That law has had a significant impact on each of them that reaches far beyond the stigma of simply being identified as a sex offender on a public registry."); *Doe v. Miller*, 405 F.3d 700, 718–19 (8th Cir. 2005) ("A final, and narrower, challenge advanced by the Does is that § 692A.2A is an unconstitutional *ex post facto* law because it imposes retroactive punishment on those who committed a sex offense prior to July 1, 2002."); *Russell v. Gregoire*, 124 F.3d 1079, 1083 (9th Cir. 1997) ("[T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some sort of 'disadvantage,' … but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." (quoting *Morales*, 514 U.S. 499, 506 n.3); *Shaw v. Patton*, 823 F.3d 556, 560 (10th Cir. 2016) ("In 1998, when Mr. Shaw was convicted, Oklahoma did not have any residency or loitering restrictions for sex offenders. … Thus, Mr. Shaw is subject to restrictions on reporting, residency, and loitering only because Oklahoma changed its laws years after Mr. Shaw's criminal conduct. By definition, these restrictions are being retroactively applied to Mr. Shaw. The resulting issue is whether these restrictions constitute punishment.").[4]

---

[4] While two circuits have cited footnote seven from *Vartelas*, those statements were cursory, and later cases in both respective circuits turned back to *Weaver* when analyzing retroactivity under the Ex Post Facto Clauses. *See, e.g.*, *McGill v. Shinn*, 16 F.4th 666, 700–01 (9th Cir. 2021); *Rhines v. Young*, 899 F.3d 482, 495 (8th Cir. 2018); *Nevarez v. Barnes*, 749 F.3d 1124, 1128 (9th Cir. 2014).

The Tenth Circuit's analysis in *Shaw v. Patton*, 823 F.3d 556, offers one illustrative example. After Oklahoma passed a law limiting sex offenders from living within certain feet of schools, playgrounds, parks, and childcare centers, the plaintiff claimed that the law violated the Ex Post Facto Clause. *Id.* at 559–60. The state argued that because these obligations did not apply until an offender entered Oklahoma, the law was not retroactive. *Id.* at 560. That argument, though, was quickly dismissed. *Id.* While an offender might not be subject to a law until he moves into the state, "the date of his move does not affect whether the statute is being enforced retroactively." *Id.* "A statute is enforced retroactively," the Tenth Circuit reasoned, "if it governs conduct that preceded the statute's enactment." *Id.*

States, when interpreting a federal or state ex post facto clause, have reached the same conclusion. *See, e.g.*, *Gonzalez v. State*, 980 N.E.2d 312, 316 (Ind. 2013) ("This provision prohibits, in relevant part, the passage of any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" (quoting *Weaver*, 450 U.S. at 28); *Commonwealth v. Baker*, 295 S.W.3d 437, 442 (Ky. 2009) ("As a threshold question, for a law to be considered ex post facto, 'it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.'"); *State v. Letalien*, 985 A.2d 4, 13–15 (Me. 2009) (summarizing retroactivity law and moving to whether the law punishes sex offenders, as the state made that principal argument); *State v. Walls*, 558 S.E.2d 524, 525–26 (S.C. 2002) ("First, the law must be retroactive so as to apply to events occurring before its enactment. … The Act meets the first prong of determining whether it falls within *ex post facto* prohibitions. The

Act is retroactive because it applies to events occurring before
its enactment. In particular, it applies to appellant whose of-
fense was committed in 1973, prior to the enactment of the
Act."); *Kitze v. Commonwealth*, 475 S.E.2d 830, 832 (Va. 1996)
(acknowledging implicitly that the law was retroactive and
holding that "the sex offender registration requirement is not
penal and that the General Assembly 'intended to facilitate
law enforcement and protection of children.'" (citation omit-
ted)).

**3.**

Our caselaw has departed from this history and judicial
consensus. Our departure began in *United States v. Leach*. 639
F.3d 769. There, Donald Leach, a convicted sex offender, chal-
lenged his conviction under the federal Sex Offender Regis-
tration and Notification Act ("SORNA"), which requires all
sex offenders to register in the jurisdiction where they work,
reside, and attend school, as contravening the Ex Post Facto
Clause. *Id.* at 770–71. The registration requirements of
SORNA, we concluded, however, were not retrospective be-
cause the law "merely create[d] new, prospective legal obli-
gations based on the person's prior history." *Id.* at 773. Thus,
Leach's argument failed for that reason alone. *Id.* We also re-
marked that *Smith v. Doe* proved indistinguishable, as both
involved similar registration requirements that did not vio-
late the Constitution. *Id.* In reaching this outcome, we joined
every other circuit to have considered SORNA's residency re-
quirements. *Id.*

*Vasquez v. Foxx*, 895 F.3d 515, then adopted the retroactiv-
ity analysis employed in *Leach*. At issue in the case was Illi-
nois's residency restriction for child sex offenders, which pro-
hibited them from residing within 500 feet of facilities with

children, such as daycares. *Id.* at 518. Joshua Vasquez raised several challenges, including one based on the Ex Post Facto Clause. *Id.* at 520. We concluded that the law was neither retroactive nor punitive. *See id.* at 520–22. A regulatory scheme that "applies only to conduct occurring *after* the law's enactment" is prospective only.[5] *Id.* at 520. Like in *Leach*, the Illinois residency statute's "requirements and any criminal penalty apply only to conduct occurring *after* its enactment—i.e., knowingly maintaining a residence within 500 feet of a child day-care home or group day-care home." *Id.* Additionally, the statute was not "'so punitive either in purpose or effect as to negate' the legislature's nonpunitive intent." *Id.* at 521 (quoting *Smith*, 538 U.S. at 92).

As made clear, the *Leach-Vasquez* rule for analyzing retroactivity can no longer stand. This is not the first time we have expressed doubt over our approach. In *Hope v. Commissioner of Indiana Department of Correction*, the en banc majority noted "[t]here is tension in the caselaw regarding the requirement of the retroactivity prong." 9 F.4th at 530. But because the plaintiffs did not ask us to overrule our prior decisions and the Indiana SORA was not punitive, we declined to revisit our decisions at the time. *Id.* The concurrence, however, observed that "[o]ur case law on the retroactivity prong need[ed] a course correction." *Id.* at 535 (Scudder, J., concurring). "What *Leach* and *Vasquez* failed to account for [was] that the registration obligations did not apply at the time the sex offenders

---

[5] It is impossible to square the concurrence's conclusion that the Ordinance is retroactive with our prior holding in *Vasquez*. Both concerned a prohibition against living in certain areas based on sex-offender status. The only difference here is the Ordinance lacks tailoring—but a few hundred feet means nothing for purposes of retroactivity.

committed the offenses triggering registration—meaning that the sex offender registration laws imposed obligations beyond those prescribed at the time of the offense." *Id.* We agree—and resolve the tension in our caselaw—as "[t]he issue is sure to surface in future cases." *Id.*

We overturn our previous rule governing the retroactivity inquiry of the Ex Post Facto Clause, announced in *Leach* and followed in *Vasquez*, that a law which "targets only [] conduct undertaken … after its enactment" is not retroactive.[6] *Leach*, 639 F.3d at 773; *see also Vasquez*, 895 F.3d at 520 (holding that a law applying "only to conduct occurring *after* the law's enactment" is not retroactive). Instead, "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date."[7] *Weaver*, 450 U.S. at 31; *see also Vartelas*, 566 U.S. at 273 ("The essential inquiry … is 'whether the new provision attaches new legal consequences to events

---

[6] While the retroactivity analysis from *Leach* and *Vasquez* must be discarded, we do not disturb the opinions' alternative holdings. Neither case involved a violation of the Ex Post Facto Clauses: SORNA's registration requirements mirrored the one at issue in *Smith v. Doe*, the Supreme Court's recent decision, *see Leach*, 639 F.3d at 773, and the Illinois statute prohibiting sex offenders from residing too close to daycares did not amount to punishment, *see Vasquez*, 895 F.3d at 521. We leave undisturbed those determinations even as we depart from the reasoning elsewhere.

[7] The test proposed by the concurrence would render the Ex Post Facto Clause's protections a nullity. Any legislature could argue persuasively that a law is addressing "postenactment dangers," even the most restrictive punishments. For example, a law adding ten years to certain sex-offender sentences could be justified as prevention against the future danger of additional crimes.

completed before its enactment.'" (quoting *Landgraf*, 511 U.S. at 269–70)).

* * *

"There is no question that the obligations imposed by" many sex-offender laws "apply retroactively." *Hope*, 9 F.4th at 535 (Scudder, J., concurring); *see also Does 1-5*, 834 F.3d at 698; *Shaw*, 823 F.3d 560. The Village's Ordinance is one example. It attaches new legal consequences to pre-Act conduct. *See Weaver*, 450 U.S. at 31. Specifically, those convicted of qualifying sex offenses now face additional burdens that did not exist at the time of their offenses; they cannot establish residence in the Village of Hartland.[8]

**B.**

The retroactivity prong, though, is only half the analysis: to violate the Ex Post Facto Clause, a law must also be punitive. *Hope*, 9 F.4th at 530. In determining whether a law is penal, courts employ the two-part "intent-effects test." *Id.* The first inquiry is "whether the legislature intended to enact a punitive, rather than a civil, law." *Id.* If not, the second inquiry is whether the law is "so punitive" in "effect as to negate [the

---

[8] The Village advances the startling argument that because the Ordinance is "temporary," it cannot be retroactive. Assuming with skepticism that a four-year ban is still temporary, we fail to see how an allegedly shorter deprivation of a constitutional right has any bearing on our analysis. A suspect taken unreasonably into custody for up to four years finds little solace in the temporary nature of his unlawful seizure—so, too, a prisoner subjected to a "brief" four-year ex post facto punishment. The importance of constitutional rights depends, in part, on their permanence, even in times of great social and political upheaval. This imaginative position from the Village borders on the frivolous and can be quickly dismissed.

State's] intention to deem it 'civil.'" *Smith*, 538 U.S. at 92. Five factors inform the effects analysis: whether the law "[1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or [5] is excessive with respect to this purpose." *Hope*, 9 F.4th at 530 (quoting *Smith*, 538 U.S. at 97).

Relying on *Hope* and *Vasquez*, the Village asks us to conduct this fact-intensive inquiry ourselves. But the Ordinance drastically differs from the targeted laws at issue in our prior cases. *See Hope*, 9 F.4th at 520 (a sex-offender residency ban within 1,000 feet of a school, daycare, youth program, or public park); *Vasquez*, 895 F.3d at 522 (a 500-foot buffer zone around daycares). Given that the district court never considered the punitive prong, we remand to allow it to do so in the first instance. *See N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 426–27 (7th Cir. 2022).

## III.

For these reasons, we reverse and remand the judgment of the district court.

KIRSCH, *Circuit Judge*, concurring in the judgment. I agree with the result. In reaching that result, though, the majority relies on *Weaver v. Graham*, 450 U.S. 24 (1981), rather than applying the retroactivity rule as set forth by the Supreme Court in *Vartelas v. Holder*, 566 U.S. 257 (2012), which limits the breadth of *Weaver*. The majority concludes that the limiting principle announced in *Vartelas* is mere dicta to be ignored. That conclusion will render retroactive "countless laws that … impose 'new disabilities' related to 'past events.'" See *id.* at 281 (Scalia, J., dissenting). Shrugging off the precedential effect of its holding, the majority does not attempt to explain why the sex offender statutes in *Leach* and *Vasquez* are retroactive but laws like 18 U.S.C. § 922(g)(1) or (g)(4) are not, discounting the latter laws because they are "not before us." Supra at 10 n.3. *Vartelas* provides the answer: These laws, and countless others like them, are not retroactive, because they "address dangers that arise postenactment." 566 U.S. at 271 n.7. Because I would recognize the *Weaver* retroactivity rule's obsolescence, leave be *Leach* and *Vasquez*, and apply *Vartelas*'s rule to find Hartland's ordinance retroactive, I concur only in the judgment.

The majority opines, "[t]he clearest formulation of the retroactivity inquiry," supra at 8–9, comes from *Weaver*: "The critical question is whether the law changes the legal consequences of acts completed before its effective date." *Weaver*, 450 U.S. at 28. But that broad rule is not the most recent law on retroactivity. In *Vartelas*, the Supreme Court limited *Weaver*, holding that certain laws otherwise satisfying *Weaver*'s boundaries are not retroactive when they target postenactment dangers. *Vartelas*, 566 U.S. at 271 n.7 (holding that the IIRIRA statute at issue operated retroactively because it did not target postenactment dangers).

The majority correctly notes that *Vartelas* did not involve an Ex Post Facto challenge like Koch's case does. But a law is retrospective or prospective. Retroactivity cannot mean one thing for Ex Post Facto cases and another for general presumption-against-retroactivity cases. Two circuits have applied *Vartelas*—without even mentioning *Weaver*—as the law of retroactivity in Ex Post Facto Clause cases. See *United States v. Elk Shoulder*, 738 F.3d 948, 958 (9th Cir. 2013); *Bremer v. Johnson*, 834 F.3d 925, 932 (8th Cir. 2016).[1]

The first question in determining whether a statute's application is prospective or retrospective is: What is the reference point—the "moment in time to which the statute's effective date is either subsequent or antecedent"? *Vartelas*, 566 U.S. at 277 (Scalia, J., dissenting). In his *Vartelas* dissent, Justice Scalia considered this moment to be when the regulated party does what the statute forbids or fails to do what it requires. *Id*. If that moment is postenactment, then the statute is not retroactive to that conduct. If preenactment, then retroactive.

I am not, contrary to the majority's charge, suggesting we apply Justice Scalia's dissent. Rather, I cite to it because the *Vartelas* majority clarified its rule in response to Justice Scalia, rejecting his proposed reference point. Instead, the majority held that courts must choose between two possible reference points—preenactment misconduct or postenactment dangers—by identifying which is the target of the legislature's regulation. *Vartelas*, 566 U.S. at 269–70. No longer is the

---

[1] The majority recognizes that both circuits have been inconsistent on their applications of *Weaver* and *Vartelas*. The later decisions from both circuits cited by the majority did not even cite, let alone address, their respective earlier opinions applying *Vartelas*.

"critical question … whether the law changes the legal conse-
quences of acts completed before its effective date." *Weaver*,
450 U.S. at 31. Rather, the critical question is: What is the law's
expressed "reason for the new disability imposed on" regu-
lated individuals? *Vartelas*, 566 U.S. at 269. If the reason is to
target "present … wrongful activity," i.e., postenactment dan-
gers, then that activity is the reference point and the law—
enacted antecedent to that conduct—is nonretroactive. *Id.* at
269–70. If the reason is to target "past misconduct," i.e., a pre-
vious conviction, then the conviction is the reference point
and the law—enacted subsequent to the conviction—is retro-
active. *Id*. In other words, if a law's expressed reason for im-
posing new obligations is, for example, a previous sex offense,
then that law is explicitly retroactive. See, e.g., *Smith v. Doe*,
538 U.S. 84, 90 (2003) (finding Alaska SORA retroactive where
law's subsection expressly making provisions retroactive did
not address hazardous conduct occurring postenactment but
did address preenactment sex offender status). *Vartelas*'s
holding is not dicta; that is guidance on retroactivity from a
Supreme Court majority opinion (and not just in a footnote,
either). Rather than simply "reemphasiz[ing]" the *Weaver*
principle, supra at 10, *Vartelas* modified what qualifies as ret-
rospective and left us lower courts "the unenviable task of
identifying   new-disabilities-not-designed-to-guard-against-
future-danger-and-also-lacking-a-prospective-thrust."   *Var-
telas*, 566 U.S. at 282 (Scalia, J., dissenting); see *id.* at 271 n.7
(majority opinion) ("[M]entally unstable persons purchasing
guns[]" was a danger cropping up in the future, so 18 U.S.C.
§ 922(g)(4) wasn't retroactive, even though the law changed
the legal consequences of acts completed before its effective
date); *id*. at 271 (18 U.S.C. § 922(g)(1) was not retroactive be-
cause prohibiting felons from possessing firearms "target[s] a

present danger, *i.e.*, the danger posed by felons who bear arms").

The majority worries *Vartelas*'s rule might "render the Ex Post Facto Clause's protections a nullity" because legislatures would begin tailoring their laws to address postenactment dangers. Supra at 16 n.7. But what's wrong with legislatures' being more explicit about whether their laws are retrospective or prospective? Courts should encourage, not discourage, such legislative clarity. The majority does not explain why incentivizing legislative precision in tailoring is so problematic. And to the extent that *Vartelas*'s framework is a problem, it is a problem for the Court that wrote *Vartelas*, not this court.

Still, the rule announced in *Vartelas* makes clear that Hartland's Ordinance is retroactive. *Vartelas*, like this case, involved a law that restricted future movement based on past misconduct: The IIRIRA statute (8 U.S.C. § 1101(a)(13)(C)(v)) effectively precluded lawful foreign travel by lawful permanent residents convicted of certain crimes by making them ineligible for reentry at the conclusion of their foreign travel. In finding that the statute did not address a danger that arose postenactment, the Court explained, "[t]he act of flying to Greece … does not render a lawful permanent resident like Vartelas hazardous." *Vartelas*, 566 U.S. at 271 n.7. "[T]he reason for the 'new disability' imposed on [Vartelas] was not his lawful foreign travel[]" but his pre-IIRIRA conviction. *Id.* at 269. "That past misconduct, in other words, not present travel, [wa]s the wrongful activity Congress targeted." *Id.* at 269–70. The same logic applies in full force to Hartland and Koch. Koch is just as dangerous in Hartland as he is in other towns. The act of moving to Hartland does not render Koch more hazardous than he was wherever he lived previously.

Hartland cannot say Koch's lawful travel is being targeted. In fact, never does the Ordinance explain what postenactment danger it addresses. The one and only reason the Ordinance's plain text offers for its new residence regulations is the previous convictions of designated sex offenders. The reference point is Koch's conviction. So the Ordinance does not address a postenactment danger but attaches a new disability (inability to move to Hartland postenactment) in respect to past misconduct (sex offense conviction preenactment). See *Vartelas*, 566 U.S. at 261. Therefore, I agree with the result in this case.

Considering *Vartelas* makes clear the retroactivity of the Ordinance, there is no reason to overrule *Leach* and *Vasquez.* Both were correctly decided under *Vartelas*'s postenactment dangers approach. The law at issue in *Leach* expressly addressed a future danger—unregistered sex offenders moving to a new jurisdiction. The registration requirements directly addressed the danger at issue—public ignorance of potentially dangerous sex offenders in the community. Cf. *Elk Shoulder*, 738 F.3d at 958 (finding nonretroactive the registration and notification provisions of the pre-SORNA Wetterling Act under *Vartelas* because "they addressed the danger that the public would not be aware of potentially dangerous sex offenders living, working, or attending school in its area."). And the Illinois statute in *Vasquez* did the same thing in requiring that sex offenders could not live within 500 feet of day cares. The new day care requirement explicitly addressed a postenactment peril recognized by the state—children in day cares in physical proximity to sex offenders. Neither *Leach* nor *Vasquez* featured a law that imposed new obligations because of previous convictions. On the contrary, the laws in both cases plainly expressed that the reasons for the new obligations were to address present activity. Both cases survive

under *Vartelas* because the laws in both cases were antecedent to the reference points—the postenactment dangers addressed.

But there's no doubt that Hartland's ordinance addresses no postenactment danger. It is not "impossible to square" this with the original *Vasquez* holding. See supra at 15 n.5. *Vartelas* instructs us to look at the purpose of the law. The Illinois statute in *Vasquez* was tailored to address the specific problem of sex offenders' close physical proximity to daycares. The Hartland ordinance never even attempts to specify what the residence ban targets besides sex offender status.

Applying *Vartelas*, I agree the ordinance is retroactive and the case should return to the district court for a determination on punitiveness.